## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |
|---|---|
| MICHAEL RUBIN, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FBR & CO., RICHARD J. HENDRIX, ARTHUR J. REIMERS, REENA AGGARWAL, THOMAS J. HYNES JR., RICHARD A. KRAEMER, ALLISON M. LEOPOLD TILLEY, MARK R. PATTERSON, and WILLIAM F. STROME,<br><br>Defendants. | Civil Action No.:<br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Michael Rubin ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of his counsel as to all other allegations herein, as follows:

### SUMMARY OF THE ACTION

1.       This is a class action brought on behalf of the public stockholders of FBR & Co. ("FBR" or the "Company") against FBR and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which FBR will be acquired by B. Riley Financial, Inc. ("B. Riley"), through its wholly-owned subsidiary BRC Merger Sub, LLC ("Merger Sub") (the "Proposed Transaction").

2.      On February 21, 2017, FBR and B. Riley issued a joint press release announcing that they had entered into an Agreement and Plan of Merger on February 17, 2017, subsequently amended on March 15, 2017 (the "Merger Agreement") pursuant to which B. Riley will acquire FBR.  Under the terms of the Merger Agreement, B. Riley will acquire all outstanding shares of FBR for 0.671 of a B. Riley common share (the "Merger Consideration").  Additionally, if FBR has at least the minimum cash and financial instrument amount available, FBR will pay a pre-closing dividend to its stockholders in an amount up to $8.50 per share (the "Pre-Closing Dividend").

3.      On March 17, 2017, B. Riley and FBR filed a Registration Statement on Form S-4 (the "Registration Statement") with the U.S. Securities and Exchange Commission ("SEC").  The Registration Statement, which recommends that FBR stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) FBR and B. Riley management's projections, utilized by FBR's financial advisor, Berkshire Capital Securities, LLC ("Berkshire"), in its financial analyses; (ii) FBR insiders' potential conflicts of interest; (iii) Berkshire's potential conflicts of interest; (iv) the sale process leading up to the Proposed Transaction; and (v) the valuation analyses prepared by Berkshire in connection with the rendering of its fairness opinion.  The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act as stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, FBR's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the

stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because FBR maintains offices in this District, and a substantial portion of the events or omissions giving rise to the claim occurred in this District.  Moreover, each of the Individual Defendants as Company officers and/or directors has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, a continuous stockholder of FBR.

9.      Defendant FBR is a Virginia corporation with its principal executive office located at 1300 North Seventeenth Street, Arlington, Virginia 22209.  FBR's common stock is traded on the NASDAQ under the ticker symbol "FBRC."

10.     Defendant Richard J. Hendrix ("Hendrix") has been President and a director of the Company since June 2006, Chief Executive Officer ("CEO") of the Company since January 2009,

and Chairman of the Board since June 2012.

11.     Defendant Arthur J. Reimers ("Reimers") has been a director of the Company since January 2007 and independent Lead Director since July 2008.

12.     Defendant Reena Aggarwal ("Aggarwal") has been a director of the Company since March 2011.

13.     Defendant Thomas J. Hynes, Jr. ("Hynes") has been a director of the Company since January 2007.

14.     Defendant Richard A. Kraemer ("Kraemer") has been a director of the Company since January 2007.

15.     Defendant Allison M. Leopold Tilley ("Leopold Tilley") has been a director of the Company since February 2016.

16.     Defendant Mark R. Patterson ("Patterson") has been a director of the Company since October 2015.

17.     Defendant William F. Strome ("Strome") has been a director of the Company since October 2014.

18.     Defendants Hendrix, Reimers, Aggarwal, Hynes, Kraemer, Leopold Tilley, Patterson and Strome are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     B. Riley is a Delaware corporation that provides financial services and solutions through several of its operating subsidiaries.

20.     Merger Sub is a Delaware limited liability company and wholly-owned subsidiary of B. Riley & Co., LLC, which is a wholly-owned subsidiary of B. Riley.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own FBR common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of March 13, 2017, there were approximately 7,077,682 FBR common shares issued and outstanding.  All members of the Class may be identified from records maintained by FBR or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

    (a)     Whether defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

    (b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    (c)     Whether Plaintiff and the other members of the Class would suffer irreparable harm were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff

has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

### SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

28.     FBR is a full-service investment banking and institutional brokerage firm focused on equity capital markets.  Through its broker-dealer operating subsidiaries, the Company's business includes: capital raising services, including underwriting and placement of public and private equity, equity-linked and debt securities; financial advisory services, including merger and acquisition advisory, restructuring, liability management, recapitalization and strategic alternative analysis; institutional sales and trading services focused on equity securities, as well as securities lending activities; and differentiated securities research focused on the core issues driving performance of FBR's covered companies and industry sectors.

29.     The Company focuses its capital markets business (investment banking and institutional brokerage) in industry sectors such as consumer, energy and natural resources, financial institutions, healthcare, industrials, insurance, real estate, and technology, media and telecommunications.

30.     Despite a historically slow initial public offering ("IPO") market in 2016, the Company is poised to deliver long-term stockholder growth.  IPO activity during the first nine

months of 2016 represented the worst year-to-date period for the U.S. IPO market since the 2009 financial crisis. For the first three quarters of 2016, IPO volume was down 50% at $13.4 billion, compared to the first three quarters of 2015. There were only 71 total IPOs in the first nine months of 2016, compared to 126 and 175 completed IPOs in the first nine months of 2015 and 2014, respectively, with related dollar volumes of $26.9 billion and $41.3 billion, respectively. Notably, according to a February 13, 2017 *Business Insider* article entitled "2017 is going to witness a rebound in the IPO market," 2016 was an aberration and the IPO market will return to normal in 2017.

31.     During FBR's fourth quarter 2016 earnings conference call, defendant Hendrix described the Company's improved performance during the fourth quarter, demonstrating FBR's recovery from the challenging year:

> It's been well documented that the 2016 IPO market was historic in its lack of activity. In fact over the course of 2015 and 2016, the small cap IPO market contracted by over 50 percent. Inevitably, that created a challenging environment for a small cap focused, book running equity franchise like ours. But as we have following previous periods of IPO and new issue weakness, we are broadly participating and even leading the market in certain instances as activity begins to rebound.
>
> Specifically, in the last 60 days, we have priced as book runner, two 144A's, one REIT IPO, participated in a number of recent IPOs as co-manager, seen continued growth in our ATM executions, and most importantly seen a dramatic increase in issuers seeking our advice and assistance in quickly accessing what has been a more receptive equity market. Because our team has remained focused on clients, even through a historically low year, we are well positioned to do what we do best – help issuers rapidly access the institutional market for equity in order to take advantage of growth opportunities and allow investors to access alpha-generating investment opportunities that provide differentiation to their client returns.

32.     On February 10, 2017, the Company reported its fourth quarter and full year 2016 financial results. For the quarter, FBR reported pre-tax income of $5.2 million on revenues of $40.2 million, compared to a pre-tax loss of $10.0 million on revenues of $23.5 million in the

fourth quarter of 2015.  Investment banking revenue was $50.5 million for the quarter, compared to $14.0 million for the fourth quarter of 2015. Defendant Hendrix commented on the fourth quarter financial results, noting:

> In the fourth quarter we generated revenue more in line with our historical averages and our results reflected more closely our expected margins and profitability. As capital markets activity picked up in the energy sector we were able to execute a large, sole-managed offering which significantly impacted our results. **Looking forward, we have an active banking pipeline of engaged transactions and have already generated more banking revenue in first quarter than we did in any of the first three quarters of 2016.**

Emphasis added.

### The Sale Process

33.     In the second half of 2016, FBR retained Berkshire to act as its financial advisor in connection with evaluating potential strategic opportunities.  FBR subsequently entered into a confidentiality agreement with B. Riley on September 29, 2016 and entered into confidentiality agreements with a number of other industry participants to discuss potential strategic opportunities. The Registration Statement, however, completely omits the number of confidentiality agreements the Company entered into, as well as the details of those confidentiality agreements, including whether they contain standstill provisions that operate to preclude any of those parties from making a competing bid for the Company.

34.     From December 2016 through the beginning of January 2017, the Company began negotiating the terms under which FBR would acquire another industry participant.

35.     In mid-January 2017, B. Riley informed FBR that it was interested in meeting again to discuss the possibility of a strategic combination between the two companies.  On February 6, 2017, Bryant R. Riley ("Riley"), Chairman and CEO of B. Riley, sent defendant Hendrix an informal note proposing an acquisition of 100% of FBR's common shares and other equity

interests for $140 million, to consist of $80.5 million of B. Riley common shares and a $59.5 million pre-closing cash dividend.

36.     On February 8, 2017, Riley sent defendant Hendrix a letter outlining a revised proposal to acquire 100% of FBR's common shares and other equity interests at a price of $148 million, to consist of $90 million of B. Riley common shares and a $58 million pre-closing cash dividend.

37.     Over the next few days, the parties conducted due diligence, FBR reviewed the terms of B. Riley's proposal, and B. Riley sent FBR a draft merger agreement.

38.     On February 14, 2017, the Board outlined B. Riley's then-current proposal to acquire FBR for approximately $20.00 per FBR common share, consisting of $11.50 of B. Riley common shares and an anticipated pre-closing cash dividend of $8.50 per FBR common share, with the potential for an increased pre-closing dividend based on the value of cash and certain financial instruments on FBR's balance sheet at closing.   Following discussion, the Board instructed management and its advisors to work toward finalizing a transaction with B. Riley.

39.     On February 17, 2017, the Board held a special meeting to discuss the terms of B. Riley's final proposal to acquire the Company for approximately $20.16 per FBR common share (based on the closing price of B. Riley common shares on February 16, 2017 and an estimated exchange ratio of 0.672), to consist of approximately $11.66 of B. Riley common shares and an anticipated pre-closing cash dividend of $8.50 per FBR common share.   The Board also noted that B. Riley conditioned execution of this proposal on defendant Hendrix entering into an employment agreement with B. Riley concurrently with signing the Merger Agreement.   Berkshire then delivered its fairness opinion.

40.     That evening, the exchange ratio was fixed at 0.671, which, combined with the

anticipated pre-closing dividend of $8.50 per share, represented total consideration of $20.28 per FBR common share.  The legal advisors finalized the terms of the Merger Agreement and FBR and B. Riley executed the Merger Agreement that same day.

41.     In early March, FBR and B. Riley agreed to amend the transaction structure. Instead of merging FBR directly into B. Riley, with B. Riley surviving the merger, FBR would merge into Merger Sub, with Merger Sub surviving the merger.  The amended and restated merger agreement was then executed on March 15, 2017, effective as of February 17, 2017.

**The Proposed Transaction**

42.     On February 21, 2017, FBR and B. Riley issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> LOS ANGELES, Feb. 21, 2017 -- B. Riley Financial, Inc. (NASDAQ: RILY), a diversified financial services company, has signed a stock for stock merger agreement to acquire FBR & Co. ("FBR") (NASDAQ: FBRC), a leading investment banking and brokerage firm, in a transaction valued at $160.1 million based on Friday's closing price of $17.55 for B. Riley Financial's common shares and an anticipated payment of a cash dividend before closing of $8.50 per share.
>
> B. Riley Financial and FBR combined will become a clear leader in small cap investment banking and brokerage in the U.S. with 600 names under research coverage.
>
> Together B. Riley Financial and FBR will provide a truly unique platform to help clients manage their capital and business prospects across all stages of the company's life cycle. The firm's capital raising capabilities will range from formation capital and growth capital to direct lending and recapitalizations, utilizing 144A, ATMs, public market offerings and other creative structures. The firm will also include one of the world's largest asset valuation and disposition businesses, as well as a business that specializes in providing complex restructuring solutions. Each of these capabilities is attached to a market leading practice within B. Riley Financial, giving it a thorough understanding of clients' needs to generate the right solution with world class execution.

\* \* \*

Upon closing, Richard Hendrix, FBR's current Chairman and CEO, will assume the role of CEO of the combined investment banking and brokerage business, which will be a subsidiary of B. Riley Financial.

\* \* \*

**Enhanced Capabilities and Market Presence with Limited Overlap** FBR's banking and brokerage businesses strategically align with B. Riley's current operations with limited overlap of clients, coverage and capital raising activities. The transaction further diversifies the overall business of B. Riley Financial and adds FBR's market leading initial equity franchise to B. Riley & Co.'s successful capital markets capabilities. In addition, the combination allows for expanded geographic distribution reach with significant operations on the East and West coasts.

"FBR's strong market share in IPOs and 144As, and sector coverage in key banking sectors, complement our business. Bringing together the breadth and depth of capabilities of B. Riley and FBR supports our investments in strategic businesses and growing areas of our firm like our restructuring, asset disposition, appraisal business and lending fund," added Riley.

**Transaction Value and Closing Details** At closing, FBR shareholders will receive .671 shares of B. Riley common stock and an anticipated pre-closing cash dividend of $8.50 per share assuming sufficient funds are available for distribution. FBR is required to deliver a minimum of $33.5 million of cash (net of certain transactional and other expenses) to B. Riley Financial at closing. Based upon B. Riley Financial's closing stock price on Friday, the stock and anticipated pre-closing dividend amounts to $20.28 per FBR share.

The transaction has been approved by B. Riley Financial's and FBR's boards of directors and is subject to regulatory and shareholder approval from both companies and the satisfaction of other customary closing conditions. B. Riley and FBR directors and officers, representing 28 percent and 19 percent respectively, have agreed to vote their shares in favor of the merger. The transaction is expected to close during the second quarter of this year.

## Insiders' Interest in the Proposed Transaction

43.    FBR and B. Riley insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of FBR.

44.     Notably, defendant Hendrix has secured a position for himself with B. Riley following completion of the Proposed Transaction.  According to the February 21, 2017 press release announcing the Proposed Transaction, "[u]pon closing, Richard Hendrix, FBR's current Chairman and CEO, will assume the role of CEO of the combined investment banking and brokerage business, which will be a subsidiary of B. Riley Financial."  The Registration Statement further states that defendant Hendrix will also fill a new seat on B. Riley's board of directors.

45.     Additionally, if FBR's named executive officers are terminated in connection with the Proposed Transaction, they stand to receive substantial severance benefits in the form of golden parachute compensation, as set forth in the table below:

| Name | Cash ($) (1) (2) | Equity ($) (3) | Perquisites/Benefits ($) (4) | Other ($) (5) | Total ($) |
|------|-----------------|----------------|------------------------------|---------------|-----------|
| Richard J. Hendrix | 2,758,612 | 1,176,943 | 88,506 | 137,169 | 4,161,230 |
| Bradley J. Wright | 138,462 | 923,816 | — | 137,169 | 1,199,447 |
| Kenneth P. Slosser | 250,000 | 1,050,872 | — | 137,169 | 1,438,041 |
| Adam J. Fishman | 250,000 | 1,050,872 | — | 137,169 | 1,438,041 |
| Gavin A. Beske | 175,000 | 444,808 | — | 54,867 | 674,675 |
| James C. Neuhauser (6) | — | 179,106 | — | — | 179,106 |

**The Registration Statement Contains Numerous Material Misstatements or Omissions**

46.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to FBR's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

47.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) FBR and B. Riley management's projections, utilized by Berkshire in its financial analyses; (ii) FBR insiders' potential conflicts of interest; (iii) Berkshire's potential

conflicts of interest; (iv) the sale process leading up to the Proposed Transaction; and (v) the valuation analyses prepared by Berkshire in connection with the rendering of its fairness opinion. Accordingly, FBR stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning FBR and B. Riley Management's Financial Projections***

48.     The Registration Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

49.     Specifically, the Registration Statement fails to disclose the individual FBR projections, for the fiscal year ended December 31, 2017, for the following items: (a) total assets; (b) tangible book value; (c) total expenses; and (d) net income.  The Registration Statement further fails to disclose any projections for FBR beyond the fiscal year ended December 31, 2017, as well as management's basis for failing to provide projections beyond fiscal 2017 in order to provide FBR stockholders with a reasonable estimate of the Company's intrinsic value.  Similarly, the Registration Statement fails to disclose why the Board failed to ask Berkshire to make reasonable extrapolations beyond 2017 in connection with its valuation of FBR.

50.     Moreover, the Registration Statement fails to disclose any financial projections for B. Riley, including the B. Riley forecasts provided by B. Riley management and relied upon by Berkshire in connection with the valuation analyses underlying its fairness opinion.  Indeed, according to the Registration Statement:

> [i]n connection with rendering its opinion on February 17, 2017, Berkshire . . . reviewed certain internal financial and operating information with respect to the past and current business, operations, financial condition and prospects of B. Riley furnished to or discussed with Berkshire Capital by the management of B. Riley, including certain financial forecasts relating to B. Riley prepared by the management of B. Riley, which we refer to as the B. Riley forecasts.

Although Berkshire relied on the B. Riley forecasts in its valuation analyses, including its *Contribution Analysis*, *Guideline Companies Analysis* and *Pro Forma Earnings Per Share and Tangible Book Value Per Share Analysis*, the Registration Statement fails to disclose any details with respect to the B. Riley forecasts.  Without this critical information, FBR stockholders have no empirical basis upon which to value B. Riley, leaving FBR stockholders in the dark as to the intrinsic value of the company whose stock FBR stockholders will receive in exchange for their shares if the Proposed Transaction is consummated.

51.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     From pages 58-59 of the Registration Statement:

**FBR's Unaudited Prospective Financial Information**

* * *

The following table presents certain unaudited prospective financial data for the quarter ending March 31, 2017 and the fiscal year ending December 31, 2017. This unaudited prospective financial data was provided to Berkshire Capital and B. Riley, was discussed by representatives of FBR and B. Riley and used by Berkshire Capital in connection with its fairness opinion to the FBR board of directors.

| | Year Ending December 31, 2017 | |
| --- | --- | --- |
| | ($ in millions, except per share amount) | |
| Adjusted Earnings Per Share (1) | $ | 0.69 |
| Adjusted Net Income to Common Shareholders (1) | | 5.0 |
| Total Revenue | | 135.3 |
| Operating Expenses | | 126.9 |
| Pre-Tax Operating Income | | 8.4 |
| | | |
| | March 31, 2017 | |
| | ($ in millions) | |
| Total Assets | $ | 1,028.1 |
| Tangible Book Value | | 114.9 |

(1) Adjusted based on a 40% tax rate on pre-tax operating income.

*Material Omissions Concerning Insiders' Potential Conflicts of Interest*

52.     The Registration Statement also fails to disclose material information concerning the potential conflicts of interest faced by Berkshire management and the Board.

53.     The Registration Statement sets forth that effective following the close of the Proposed Transaction "the number of directors constituting the full B. Riley board of directors will be eight, an increase of one, with Richard J. Hendrix, who is the Chairman, President and Chief Executive Officer of FBR, being appointed to fill the new seat" and that "following the closing, Mr. Hendrix will serve as President and Chief Executive Officer of the entity that will house the businesses of FBR and B. Riley & Co., LLC, which we refer to as the combined brokerage business."   However, the Registration Statement completely fails to set forth any of the employment related discussions and negotiations that occurred between B. Riley and FBR's executive officers, including defendant Hendrix.   The Registration Statement further fails to disclose whether any of B. Riley's prior proposals or indications of interest mentioned management retention or the potential for Board members to sit on the combined company's board of directors.

54.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)     From page 72 of the Registration Statement:

**B. Riley Board of Directors After the Merger**

At or prior to the effective time, the number of directors constituting the full B. Riley board of directors will be eight, an increase of one, with Richard J. Hendrix, who is the Chairman, President and Chief Executive Officer of FBR, being appointed to fill the new seat in accordance with the terms of the employment agreement as more fully described in "The Merger Agreement—Related Agreements—Employment Agreement." In accordance with the terms of the employment agreement, following the closing, Mr. Hendrix will serve as President and Chief Executive Officer of the entity that will house the businesses of FBR and B. Riley & Co., LLC, which we refer to as the combined brokerage business. Information about the current B. Riley directors can be found in the documents listed under "Where You Can Find More Information" included elsewhere in this joint proxy statement/prospectus.

(b)     From page 75 of the Registration Statement:

### B. Riley Agreement with Richard J. Hendrix

In connection with FBR's entry into the merger agreement, Mr. Hendrix entered into an employment agreement with B. Riley & Co., LLC and, solely with respect to its obligations under such employment agreement, B. Riley, which we refer to as the new Hendrix employment agreement, effective contingent on the closing of the merger and Mr. Hendrix remaining employed by FBR as of immediately prior to the closing of the merger. The new Hendrix employment agreement provides that, beginning on the closing date, Mr. Hendrix will serve as President and Chief Executive Officer of the combined brokerage business, for a fixed employment term ending December 31, 2020, except that if there is a change in control (as defined in the employment agreement), the term will automatically extend so as to be at least two years from the date of such change in control. During the term of the new Hendrix employment agreement, Mr. Hendrix will also serve on the B. Riley board of directors.

In addition, during the term of the new Hendrix employment agreement, Mr. Hendrix will receive an annual base salary of $750,000 and be eligible to receive an annual bonus based on the combined brokerage business's pre-CEO adjusted EBITDA (as defined in the new Hendrix employment agreement). Fifty percent of any annual bonus amounts over $1 million will be paid in restricted stock of B. Riley, which will be subject to forfeiture if the combined brokerage business's pre-CEO adjusted EBITDA for the following fiscal year is negative. Mr. Hendrix will also be eligible to participate in the incentive and benefit plans of B. Riley, B. Riley & Co., LLC, and the combined brokerage business, as applicable.

Upon a termination of employment without cause (as defined in the new Hendrix employment agreement) or by Mr. Hendrix for good reason (as defined in the new Hendrix employment agreement), in addition to any earned but unpaid amounts for service prior to the date of termination, Mr. Hendrix will be entitled to: (i) a payment equal to 1.5 times the sum of the annual salary paid and the average annual incentive bonuses earned in the two completed fiscal years prior to the date of

termination, which, prior to a change in control and prior to the first anniversary of the closing date, is not to be less than $1.5 million; (ii) a pro rata annual incentive payment based on annualized financial performance of the combined brokerage business for the fiscal year; (iii) immediate vesting of equity awards, other than certain performance awards which will remain eligible to vest based on the achievement of the applicable performance goals; and (iv) three years of health insurance coverage. Upon a termination of employment due to Mr. Hendrix's death or disability, in addition to any earned but unpaid amounts for service prior to the date of termination, Mr. Hendrix will be entitled to a pro rata annual incentive payment and the vesting of equity awards, generally as described in clauses (ii) and (iii) above.

Under the new Hendrix employment agreement, Mr. Hendrix will forfeit certain payments made in connection with a change in control to the extent that such forfeiture would place Mr. Hendrix in a more favorable after-tax position under Section 4999 of the Code.

In addition, the new Hendrix employment agreement contains restrictive covenants prohibiting the disclosure of confidential information and, during the term of his employment and for a 12-month period following the termination of his employment by B. Riley & Co., LLC with or without cause or his resignation with or without good reason, competing with the combined brokerage business and soliciting the employees and customers of B. Riley & Co., LLC and its affiliates.

### *Material Omissions Concerning Berkshire's Potential Conflicts of Interest*

56.     In addition, the Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Berkshire in acting as the Company's financial advisor.

57.     The Registration Statement discloses the fee payable to Berkshire by FBR as a result of the Proposed Transaction, and the compensation paid to Berkshire by FBR over the past two years as well as the nature of the services provided.

58.     However, the Registration Statement fails to disclose whether Berkshire has provided any services to B. Riley or its affiliates in the past two years, and if so, the nature of those services and the amount of compensation it earned for those services.

59.     Full disclosure of investment banker compensation and all potential conflicts is

required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

60.    The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)    From page 70 of the Registration Statement:

Berkshire Capital acted as financial advisor to FBR in connection with the merger and will receive a fee comprising (i) $100,000 paid upon execution of its engagement letter with FBR, (ii) monthly retainers totaling $100,000, (iii) $300,000 paid upon delivery of Berkshire Capital's opinion, and (iv) $1,900,000 upon the consummation of the merger. FBR has also agreed to reimburse Berkshire Capital's reasonable out-of-pocket expenses incurred in connection with its engagement and to indemnify Berkshire Capital and its affiliates and their respective partners, directors, officers, employees and agents against certain expenses and liabilities, including liabilities under the securities laws.

Berkshire Capital has previously provided financial advisory services to FBR in connection with an acquisition transaction by FBR that was announced in July 2015, for which Berkshire Capital received a fee of $75,000.

### Material Omissions Concerning the Sale Process

61.    The Registration Statement also fails to disclose or misstate material information relating to the sale process leading up to the Proposed Transaction.

62.    The Registration Statement fails to expressly indicate whether the confidentiality agreements entered into between the Company and a number of industry participants in the second half of 2016 contained standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these industry participants from making a topping bid for the Company.  The Registration Statement further fails to disclose the details of FBR's discussions with the industry participants, including whether any of the industry participants submitted an indication of interest to acquire FBR and the terms thereof.  Such information is material to FBR stockholders as a reasonable FBR stockholder would find it

material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

63. The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a) From page 53 of the Registration Statement:

> In the second half of 2016, FBR began to evaluate potential strategic opportunities. FBR retained Berkshire Capital to act as its financial advisor in connection with an exploration of possible strategic opportunities based on, among other factors, Berkshire Capital's reputation, experience in mergers and acquisitions, valuations, financing and capital markets and its familiarity with FBR, FBR's strategic goals and the industries in which FBR competes. After a discussion and review of potential strategic opportunities with representatives of Berkshire Capital, FBR entered into confidentiality agreements, including a confidentiality agreement, dated as of September 29, 2016, between FBR and B. Riley, with a number of industry participants to discuss various potential strategic opportunities and engaged in informal discussions about potential strategic opportunities with various industry participants. Representatives of FBR also met with representatives of several industry participants, including B. Riley, and provided financial due diligence information with respect to FBR. During this period, management of B. Riley would periodically update the B. Riley board of directors as to its due diligence with respect to FBR. The discussions with B. Riley did not progress further, however, until January 2017.

**Material Omissions Concerning Berkshire's Financial Analyses**

64. The Registration Statement describes Berkshire's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Berkshire's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, FBR's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Berkshire's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information

available to FBR's stockholders.

65.     The Registration Statement fails to disclose various material elements of the financial analyses performed by Berkshire.  For example, Berkshire performed an *Analysis of Precedent Transactions* that was presented to the Board, yet the Registration Statement fails to disclose the individual multiples for each of the selected transactions analyzed by Berkshire, as well as any benchmarking analyses Berkshire performed for FBR in relation to the target companies.  As Berkshire failed to select and apply multiples to FBR and B. Riley's merger, the individual multiples are critical for FBR stockholders to assess the Proposed Transaction.

66.     Similarly, Berkshire performed a *Guideline Public Companies Analysis* that was presented to the Board, yet the Registration Statement fails to disclose the individual multiples for each of the selected public companies analyzed by Berkshire, as well as the financial performance metrics for each selected company.  As Berkshire failed to select and apply multiples to FBR, the individual multiples are critical for FBR stockholders to assess FBR in relation to its peer companies.

67.     Without such undisclosed information, FBR stockholders cannot evaluate for themselves whether the financial analyses performed by Berkshire were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Berkshire's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

68.     The omission of this information renders the following statements in the Registration Statement false and/or materially misleading in contravention of the Exchange Act:

(a)      From pages 64-66 of the Registration Statement:

### *Analysis of Precedent Transactions*

Berkshire Capital calculated and compared valuation multiples implied by the transaction consideration to those of selected precedent mergers and acquisitions for which information was publicly available that Berkshire Capital, based on its professional judgment and experience as a financial advisor, deemed appropriate for purposes of this analysis. The selected mergers and acquisitions included 12 transactions announced between April 26, 2010 and February 10, 2015. Although none of the target companies included in Berkshire Capital's analysis is identical or directly comparable to FBR, the selected transactions were chosen because they included target companies with certain operational and financial characteristics which, for purposes of this analysis, may be considered similar to certain operational or financial characteristics of FBR. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Rather, this analysis involves complex considerations and judgments concerning differences in financial and operating characteristics, the terms of the transactions and other factors that could affect the acquisition values of the companies to which FBR was compared. The group included the following transactions:

| Target | Acquiror |
|---|---|
| Thomas Weisel Partners Group, Inc. | Stifel Financial Corp. |
| JVB Financial Holdings, LLC | Cohen & Company Inc. |
| Miller Tabak & Co. LLC; MTR Capital Corp. | GMP Capital Inc. |
| PrinceRidge Holdings LP | Institutional Financial Markets, Inc. |
| Morgan Keegan & Co. | Raymond James Financial |
| KBW, Inc. | Stifel Financial Corp. |
| Jefferies Group, Inc. | Leucadia National Corporation |
| Duff & Phelps Corporation | Investor Consortium |
| Seattle-Northwest Securities Corporation | Piper Jaffray Companies |
| B. Riley & Co., LLC | Great American Group, Inc. |
| G.X. Clarke & Co. | INTL FCStone Inc. |
| Cogent Partners, LP | Greenhill & Co., Inc. |

Berkshire Capital reviewed the following multiples for each of the transactions: transaction value to last twelve months', or LTM, revenues and transaction value to LTM pre-tax income. Precedent transaction multiples implied by forecasted pre-tax income have been excluded as pre-tax income forecasts were not generally available for the target companies. Berkshire Capital compared the multiples implied by FBR's current market value, the merger consideration and the transaction consideration to the minimum, median and maximum multiples of the precedent transactions. Where applicable, earn-out payments are included at the maximum potential value and discounted to present value using a 10% discount rate. The results of these analyses are summarized in the following table.

| | Trading Multiples For FBR Based on Closing Stock Price on February 16, 2017 | Implied Multiples | | Implied Multiples of Precedent Transaction | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Based on Manager Consideration | Based on Transaction Consideration | Minimum | Median | Maximum |
| Market Value as a Multiple of LTM Revenues | 1.4x | 0.9x | 1.6x | 0.6x | 1.3x | 2.5x |
| Market Value as a Multiple of LTM Pre-Tax Income | NM | NM | NM | 6.9x | 10.8x | 14.4x |
| Market Value as a Multiple of Estimated Fiscal Year 2017 Pre-Tax Income | 15.8x | 11.0x | 18.9x | NA | NA | NA |

### *Guideline Public Companies Analysis*

Berkshire Capital reviewed, calculated and compared selected financial information, ratios and multiples for FBR and B. Riley with the corresponding financial information, ratios and multiples of a group of publicly-traded mid-size investment banks and specialized advisory investment banks that Berkshire Capital, based on its professional judgment and experience as a financial advisor, deemed appropriate for purposes of this analysis. Although none of the selected publicly-traded companies is identical and directly comparable to FBR or B. Riley, the companies included in the analysis were chosen because they are companies with certain operational and financial characteristics which, for purposes of analysis, may be considered similar to certain operational or financial characteristics of FBR and B. Riley. Accordingly, an evaluation of the results of this analysis is not entirely mathematical. Berkshire Capital also made qualitative judgments concerning differences in the business, financial and operating characteristics and prospects of FBR and B. Riley, on the one hand, and the selected companies, on the other hand, that could affect the public trading values of each in order to provide a context in which to consider the results of the quantitative analysis. The selected publicly-traded companies included:

The following financial institutions were selected for the comparison:

- Cowen Group, Inc.

- Evercore Partners Inc.

- Greenhill & Co., Inc.

- Houlihan Lokey, Inc.

- JMP Group LLC

- Ladenburg Thalmann Financial Services Inc.

- Lazard Ltd.

- Moelis & Company

- Oppenheimer Holdings Inc.

- Piper Jaffray Companies

- PJT Partners, Inc.

- Raymond James Financial, Inc.

- Stifel Financial Corp.

For each of the selected companies, Berkshire Capital calculated and reviewed, based on the most recent publicly available financial information as of February 17, 2017, the ratio of enterprise value to LTM revenues; enterprise value to consensus estimated 2017 revenues as published by equity research analysts; market value to LTM pre-tax income; market value to consensus estimated 2017 pre-tax income published by equity research analysts, and; market value as a multiple of tangible book value. Berkshire Capital obtained consensus revenue and pre-tax income estimates for the selected public companies from S&P Global. For purposes of this analysis, forecast fiscal year 2017 revenues and pre-tax income for FBR and B. Riley were based on the FBR forecasts and the B. Riley forecasts. The analysis compared the minimum, median and maximum multiples for the selected public companies to (i) the corresponding multiples for FBR and B. Riley based on their respective stock prices as of February 16, 2017; (ii) the multiples implied by the merger consideration, and; (iii) the multiples implied by the transaction consideration. For purposes of this analysis: (i) enterprise value is defined as market capitalization plus long-term debt, preferred equity, and noncontrolling interest, less cash and cash equivalents; (ii) market capitalization is based on the weighted average diluted shares outstanding for the most recent quarter, other than for FBR and B. Riley, the market capitalizations for which are based on 7,895,386 and 19,500,000 common shares outstanding, respectively, and; (iii) market value is defined as market capitalization plus noncontrolling interest.

The FBR multiples implied by 2016 pre-tax income are not meaningful due to FBR's reported operating loss for the year. The results of this analysis are summarized in the following tables.

| | Trading Multiples For FBR Based on Closing Stock Price on February 16, 2017 | Implied Multiples | | Implied Multiples of Guideline Public Companies | | |
| | | Based on Merger Consideration | Based on Transaction Consideration | Minimum | Median | Maximum |
|---|---|---|---|---|---|---|
| Enterprise Value as a Multiple of LTM Revenues | 0.5x | 0.7x | 0.7x | 0.3x | 2.1x | 3.1x |
| Enterprise Value as a Multiple of Forecast Fiscal Year 2017 Revenues | 0.3x | 0.5x | 0.5x | 0.3x | 1.9x | 2.9x |
| Market Value as a Multiple of LTM Pre-Tax Income | NM | NM | NM | 9.3x | 12.3x | 19.7x |
| Market Value as a Multiple of Estimated Fiscal Year 2017 Pre-Tax Income | 15.8x | 11.0x | 18.9x | 7.0x | 10.8x | 13.3x |
| Market Value as a Multiple of Tangible Book Value (Post-Dividend) | NA | 1.9x | NA | 0.7x | 3.0x | 16.1x |
| Market Value as a Multiple of Tangible Book Value (Post-Dividend) | 1.2x | NA | 1.4x | 0.7x | 3.0x | 16.1x |

| | Trading Multiples For B. Riley Based on Closing Stock Price on February 16, 2017 | Implied Multiples of Guideline Public Companies | | |
| | | Minimum | Median | Maximum |
|---|---|---|---|---|
| Enterprise Value as a Multiple of LTM Revenues | 1.4x | 0.3x | 2.1x | 3.1x |
| Enterprise Value as a Multiple of Forecast Fiscal Year 2017 Revenues | 1.3x | 0.3x | 1.9x | 2.9x |
| Market Value as a Multiple of LTM Pre-Tax Income | 6.7x | 9.3x | 12.3x | 19.7x |
| Market Value as a Multiple of Estimated Fiscal Year 2017 Pre-Tax Income | 7.7x | 7.0x | 10.8x | 13.3x |
| Market Value as a Multiple of Tangible Book Value (Post-Dividend) | 6.3x | 0.7x | 3.0x | 16.1x |

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

69.     Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

70.     During the relevant period, defendants disseminated the false and misleading

Registration Statement specified above, which failed to disclose material facts necessary in order

to make the statements made, in light of the circumstances under which they were made, not

misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated

thereunder.

71.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the sales process for the Company, the financial analyses performed by the Company's financial advisors, and the actual intrinsic standalone value of the Company.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

72.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

73.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

74.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     The Individual Defendants acted as controlling persons of FBR within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of FBR and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

79.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

80.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, FBR's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to FBR stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: April 4, 2017

/s/ Elizabeth K. Tripodi
Elizabeth Tripodi, VA Bar #73483
LEVI & KORSINSKY LLP

27

1101 30th St. NW, Suite 115
Washington, D.C. 20007
Telephone:      (202) 524-4290
Facsimile:      (202) 333-2121
etripodi@zlk.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel.: (212) 682-3025
Fax: (212) 682-3010